IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

GARDEN CITY BOXING CLUB, INC. §
§
VS. § CIVIL ACTION NO.4:06-CV-890-Y
§
THOMAS ELMER JOHNSON §

ORDER PARTIALLY GRANTING AND
PARTIALLY DENYING MOTION FOR SUMMARY JUDGMENT

Garden City Boxing Club, Incorporated ("Garden City"), initiated this action against Thomas Elmer Johnson alleging claims under sections 553 and 605 of the Federal Communications Act ("FCA") of 1934, as amended.[1] This case aries out of Johnson's alleged unlicensed interception and exhibition of the June 8, 2002, heavyweight championship boxing match between Mike Tyson and Lennox Lewis ("the Tyson/Lewis fight") in his establishment, *The Gold Nugget*. Johnson has filed a motion (doc. #21) for summary judgment arguing that Garden City's suit is barred by the statute of limitations or, in the alternative, should be dismissed under the doctrine of latches.[2] After review, the Court concludes that the motion should be PARTIALLY GRANTED AND PARTIALLY DENIED.

---

[1] 47 U.S.C. §§ 553 and 605

[2] Johnson also argues that Garden City's claim under section 553 should be dismissed because it only applies to the unlawful interception of a transmission via a coaxial cable. He further argues that Garden City's section 605 claim should be dismissed because it fails to present any evidence that he exhibited the Tyson/Lewis fight in his establishment. Johnson's argument regarding the lack of evidence proving a violation of section 605 first appeared in his reply brief. His motion for summary judgment contains a section titled: "I. GROUNDS FOR SUMMARY JUDGMENT." (Def.'s Mot. at 1.) This argument was not one of the "grounds" asserted in Johnson's motion. Nevertheless, as will be more fully discussed below, because the Court concludes that Garden City's response contains sufficient evidence establishing that a genuine issue of material fact exists as to whether Johnson broadcast the Tyson/Lewis fight in his establishment without a license from Garden City, the Court DENIES Garden City's motion (doc. #30) to strike Johnson's reply.

I. Factual Background

Garden City held the exclusive rights to broadcast and license the rebroadcast of the Tyson/Lewis fight in Texas. Garden City entered into licensing agreements with establishments in Texas for the commercial rebroadcast of the Tyson/Lewis fight, and it transmitted the fight to its licensees using an electronically coded or scrambled transmission that had to be decoded or descrambled using electronic decoding equipment. This transmission was sent via satellite and cable communication systems.

Johnson owns and manages a bar called *The Gold Nugget*. In April 1999, Johnson contracted with DirecTV, Incorporated, for satellite TV services in his establishment. Although *The Gold Nugget* is a commercial establishment, the DirecTV service was set up as a "residential" account for a single-family dwelling. According to the account records, two satellite receivers were ordered for the establishment: one receiver was for the "bedroom" and the other was for the "livingroom." (Pl.'s App. at Ex. B. 2.)

Johnson's DirecTV account shows that on June 8, 2002, the day of the Tyson/Lewis fight, a phone call was made to DirecTV. Johnson's account reflects that the person who made the call was on hold for thirty minutes before being able to place an order to receive the Tyson/Lewis fight on both satellite receivers. Because the fight was ordered for both receivers, Johnson's account was charged twice for the fight.

Garden City employed the use of "auditors" who, on the night of the Tyson/Lewis fight, visited different commercial establishments that were not authorized to broadcast the fight. If an auditor entered an establishment and discovered the fight's being exhibited without authority, the auditor would report that finding back to representatives of Garden City for further investigation and civil prosecution. But unless an auditor entered an establishment and actually witnessed the unlicensed display of the Tyson/Lewis fight, Garden City would not be aware of the unlawful conduct.

According to Garden City, its investigative file does not contain a report from any of its auditors indicating that an auditor visited Johnson's establishment and witnessed the unlicensed display of the Tyson/Lewis fight. Garden City came to believe that the fight was ordered for Johnson's establishment in May 2006 as its lawyers were reviewing Johnson's DirecTV account as part of discovery in another lawsuit: *Kingvision Pay-Per-View, Ltd. v. Thomas Elmer Johnson, Individually and d/b/a/ The Gold Nugget*, No. 4:06-CV-273-A.[3]

In addition to representing Garden City, its attorneys also represented Kingvision Pay-Per-View, Ltd ("Kingvision"). Kingvision brought suit against Johnson and his establishment in January 2006 for the unlicensed interception and exhibition of the

---

[3] That case was settled in July 2006.

March 1, 2003, championship boxing match between John Ruiz and Roy Jones Jr. In April 2006, Johnson executed a consent and waiver authorizing DirecTV to release his account history to Kingvision. Its attorneys received the history in May 2006 and, after reviewing it, learned that Johnson's commercial establishment had a residential DirecTV account. They also learned that Johnson's account had been charged twice for the Tyson/Lewis fight so that the two receivers associated with the account would receive the fight. After informing Garden City of their discovery, they sent Johnson's attorneys a letter notifying them of Garden City's claim that Johnson intercepted and exhibited the Tyson/Lewis fight in his establishment without a license from Garden City. Garden City filed the instant suit in November 2006.

Garden City states that prior to May 2006, it had no knowledge that Johnson's *Gold Nugget* was registered for residential satellite TV service. Garden City also states that prior to May 2006, it had no knowledge of Johnson's alleged unlicensed interception and broadcast of the Tyson/Lewis fight in his establishment.

Johnson denies ordering the Tyson/Lewis fight and he denies ever rebroadcasting the fight in his establishment. Johnson states that he was at his establishment the night of the fight and states that it was not rebroadcast in his establishment. He claims that the patrons of his bar would not be interested in watching prize fights. Nevertheless, Johnson admits that he keeps all of

4

DirecTV's billing statements as part of the regular course of his business and concedes that he was billed twice for the Tyson/Lewis fight. The records indicate that Johnson paid the bill and never contested the double charge for the fight. Still, Johnson claims that he does not know who ordered the fight, and he claims that he did not authorize anyone to order the fight on his account.

II. Analysis

    A.    Summary-Judgment Standard

Summary judgment is appropriate when the record establishes "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The party moving for summary judgment has the initial burden of demonstrating that it is entitled to a summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party need not produce evidence showing the absence of an issue of fact with respect to an issue on which the nonmovant bears the burden of proof, however. Rather, the moving party need only point out that the evidentiary documents in the record contain insufficient proof concerning an essential element of the nonmovant's claim. *See id.* at 323-25.

When the moving party has carried its summary-judgment burden, the nonmovant must go beyond the pleadings and by its own affidavits or by the depositions, answers to interrogatories, or

admissions on file set forth specific facts showing that there is a genuine issue for trial. *See* FED. R. CIV. P. 56(e). This burden is not satisfied with some abstract doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

In making its determination on the motion, the Court must look at the full record in the case. *See* Fed. R. CIV. P. 56(c); *Williams v. Adams*, 836 F.2d 958, 961 (5th Cir. 1988). Nevertheless, Rule 56 "does not impose on the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 825 (1992). Instead, parties should "identify specific evidence in the record, and . . . articulate the 'precise manner' in which that evidence support[s] their claim." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994).

B.  Discussion

1.  Statute of Limitations and Latches

Johnson contends that Garden City's action under the FCA is barred by a statute of limitations or, in the alternative, by the doctrine of latches. The Court will address each argument in turn.

a.  Statute of Limitations

Sections 553 and 605 of the FCA do not contain a limitations period. But, as Johnson recognizes, in *Prostar v. Massachi,* 239 F.3d 669, 678 (5th Cir. 2001), the United States Court of Appeals for the Fifth Circuit held that the three-year limitations period in the Copyright Act governs actions brought under sections 553 and 605 of the FCA. Notwithstanding this precedent, Johnson argues that the Court should follow *Kingvision Pay-Per-View v. Belmont, Inc.,* 366 F.3d 217 (3rd Cir. 2004), where the Third Circuit held that the two-year limitations period of the Pennsylvania cable-piracy statute applied to claims under section 553 of the FCA rather than the three-year period of the Copyright Act. Johnson contends that TEX.CIV.PRAC. & REM. CODE § 123.002 is an anti-piracy statute that "is remarkably similar" to section 605 of the FCA.[4] He argues that this Court should apply its two-year limitations

---

[4] This statute is titled "Cause of Action" presumably because it does no more than create a cause of action against anyone who intercepts a communication or uses information obtained through the interception of a communication. It has been referred to by the Texas courts as "the state wiretap statute." *Collins v. Collins,* 904 S.W.2d 792, 804 (Tex.App.—Houston 1995, writ denied).

7

provision and not the three-year of the Copyright Act. *See Collins,* 904 S.W.2d at 804 (holding action under state wiretap statute sounds in tort and is therefore subject to the two-year limitations period for tort actions set out in TEX.CIV.PRAC. & REM. CODE § 16.003).

Alternatively, Johnson argues that this Court should follow the United States District Court for the District of Arizona in *In re Cases Filed by DirecTV, Inc.,* 344 F. Supp. 2d 647 (D. Az. 2004). There, the Arizona federal court concluded that the two-year limitations period found in the Electronic Communications Privacy Act ("ECPA")[5] was the most analogous federal statute to claims brought under section 605 of the FCA. Either way, Johnson is arguing that the Court should decline to follow Fifth Circuit precedent applying the three-year limitations period in the Copyright Act and, instead, apply a two-year period found in either the Texas statute or the ECPA.

Setting aside for the moment that the Court is bound to follow *Prostar,* whether the limitations period is two years or three is irrelevant to this case for two reasons. First, Garden City's complaint shows that this suit was filed more than four years after the alleged wrongful conduct occurred. Thus, if the limitations period began to accrue on the date Johnson allegedly pirated the Tyson/Lewis fight, Garden City's cause of action would be time-

---

[5] *See* 18 U.S.C. § 2510, *et seq.*

barred regardless of whether the limitations period were two or three years.

Second, if, as Garden City argues, the discovery rule will allow tolling of all of the proffered statutes, and Garden City establishes that it did not discover Johnson's alleged piracy until May 2006, Garden City's action, brought six months later, would not be time-barred. But on what date did Garden City's cause of action under sections 553 and 605 of the FCA accrue?

Because the Fifth Circuit has directed the Court to look to the Copyright Act for the appropriate limitations period for actions brought under sections 553 and 605 of the FCA, the Court concludes that the determination of when a claim under sections 553 and 605 begins to accrue should be addressed as would claims under the Copyright Act. *See DirecTV, Inc. v. Brady,* No. 03-1450 All Cases Section "N" (1), 2004 U.S. Dist. LEXIS 15169 *12 (E.D. La. Aug. 4, 2004). Garden City argues that the statute of limitations did not begin to run until May 2006 because that was the date it first learned of Johnson's alleged unlawful conduct.

The Copyright Act provides, "No civil action shall be maintained . . . unless it is commenced within three years after the claim accrued." 17 U.S.C. § 507(b). Nothing in the express wording of the statute prohibits the application of general equitable tolling doctrines, such as the discovery rule, to determine when a cause of action under the Copyright Act accrues.

*See Comast of Illinois X v. Multi-Vision Electronics, Inc.,* 491 F.3d 938, 944 (8th Cir. 2007)("In federal question cases, the discovery rule applies in the absence of a contrary directive from Congress."). (Internal quotations and citations omitted.) Indeed, in *Prather v. Neva Paperbacks, Inc.,* 446 F.2d 338, 340 (5th Cir. 1971), the court of appeals held that general equitable tolling doctrines under federal law apply to copyright-infringement actions. *See also Daboub v. Gibbons,* 42 F.3d 285, 291 (5th Cir. 1995)(noting that the discovery rule did not apply to certain of the plaintiff's state causes of action but applying it to the copyright-infringement claim).[6] Thus, the Court concludes that the discovery rule is applicable for copyright-infringement actions and thus, available to causes of action under sections 553 and 605 of the FCA.

Having determined that the discovery rule applies, the Court concludes that Garden City's claims are not time-barred. "The discovery rule tolls the operation of [a statute of limitations] until the point in time in which the plaintiff learned or by reasonable diligence could have learned that it had a cause of action." *Edmark Industries SDN. BHD. v. South Asia International*

---

[6] In particular, the court of appeals stated, "With regard to the remaining causes of action, including the RICO claim, even if the discovery rule did apply, we agree with the district court that those causes of action are barred by the limitations." *Daboub,* 42 F.3d at 291. In a footnote, the court of appeals indicated that "the discovery rule . . . seems to apply in RICO actions" while at the same time emphatically stating that it did not apply to the plaintiff's causes of action for conversion, misappropriation, or unfair competition. *Id.* at 291 n.10. It made no such statement with regard to the plaintiff's cause of action for copyright infringement.

*(H.K.) Ltd.,* 89 F. Supp. 2d 840, 842-43 (E.D. Tex. 2000). The burden is on the plaintiff "to come forward and demonstrate" that the discovery rule should toll the limitations period. *Prather,* 446 F.2d at 340.

Garden City correctly points out that Johnson has presented nothing to the Court to contradict Garden City's assertion that it first discovered Johnson's alleged piracy in May 2006. The evidence shows that Garden City's attorneys received Johnson's DirecTV account history in May 2006 and learned for the first time that the Tyson/Lewis fight had been ordered. The evidence shows that until May 2006, Garden City had no knowledge that the Tyson/Lewis fight had been ordered on Johnson's DirecTV account, and no knowledge that Johnson maintained a residential DirecTV account.

Further, Garden City has demonstrated that it has acted with more than just reasonable diligence in trying to discover the pirating of the Tyson/Lewis fight. Garden City has presented evidence that it employed auditors to visit commercial establishments that did not contract with Garden City to receive and rebroadcast the fight in an effort to learn which establishments were engaged in the unauthorized commercial exhibition of the fight. Garden City rationally cannot be expected to have individuals enter every commercial establishment across the United States. Garden City has also presented uncontroverted evidence that unless

11

its auditors catch the establishments "red-handed," it is virtually impossible for it to know who has unlawfully received and re-broadcast the fight. Therefore, the Court concludes that Garden City has met its summary-judgment burden under the discovery rule; there is no material dispute its claims under sections 553 and 605 of the FCA did not accrue until May 2006.

b. Latches

Alternatively, Johnson argues that he is entitled to summary judgment on all of Garden City's claims based on the doctrine of latches. Johnson complains that "this is the third lawsuit of this type filed against [him] by attorneys representing one or more 'fight promoters.'" (Def.'s Mot. at 7.) The first was *Joe Hand Promotions, Inc. v. Thomas Elmer Johnson d/b/a/ The Gold Nugget*, Civil Action No. 4:05-CV-545-Y, filed in August 2005. Joe Hand Promotions alleged that Johnson pirated the heavyweight boxing match between Mike Tyson and Clifford Etienne on February 22, 2003. Joe Hand Promotions voluntarily dismissed the action with prejudice. The second was the Kingvision suit previously mentioned. The third is this suit. Both this and the Kingvision suit were filed by the same attorneys; Joe Hand Promotions had different representation.

Johnson's latches argument is as follows: The attorneys who represented Kingvision are the same attorneys who represent Garden

City. In the Kingvision suit, its attorneys knew of Johnson's alleged illegal activity in April 2003, but failed to bring suit against him until January 2006. Had Kingvision's attorneys promptly brought forth that suit, Johnson argues, they would have discovered the alleged illegal conduct that is the subject of this suit well before May 2006. "Indeed," Johnson contends, "had [Kingvision's] attorneys commenced the [Kingvision] suit shortly after [April 2003] . . . and initiated normal discovery, they would have discovered this alleged violation in 2003, less than two years after it occurred." (*Id.* at 8.) Because Garden City employs the same attorneys as Kingvision, Johnson argues their conduct in the Kingvision case should be imputed to Garden City. Thus, according to Johnson, because Kingvision is guilty of inexcusable delay in bringing its case against Johnson, Garden City is also guilty of inexcusable delay in learning of the alleged illegal conduct that is the subject of this suit because Garden City has employed the same attorneys as Kingvision. The Court disagrees.

Laches is commonly understood as an inexcusable delay that results in prejudice to the defendant. *See Leatherwood v. Defense Procurement Manufacturing Services, Inc.,* No. 4:03-CV-313-Y, 2007 U.S. Dist. LEXIS 28274 *20 (N.D. Tex. Mar. 16, 2004)(Means, J.). The defense of latches has three elements: (1) delay in asserting a right or claim; (2) the delay is inexcusable; and (3) the defendant will suffer prejudice from the inexcusable delay. *Id.*

13

Similar to the discovery rule, the period for latches begins to run when the plaintiff knew or should have known of the alleged illegal activity. *Id.*

As discussed above, Garden City did not delay in asserting its claim against Johnson. Garden City first discovered Johnson's alleged piracy in May 2006. A few days later, its attorneys sent notice to Johnson's attorneys informing them of Garden City's claim in this case. Six months later, Garden City filed this suit. The Court concludes that Johnson has failed to show that Garden City delayed in asserting its claims against him, and even if it did, it is certainly not inexcusable.

Whether Kingvision is guilty of inexcusable delay in bringing its claims against Johnson is irrelevant. The Court is unaware of any case that imputes the delay of a plaintiff in one case to a different plaintiff in another case simply because the plaintiffs shared the same attorneys. It is of no moment that Garden City learned of Johnson's alleged illegal activity while its attorneys were conducting discovery on behalf of another client in a separate and unrelated case.[7] What is relevant is Garden City's actions once it learned of Johnson's alleged illegal activity. The evidence raises no material issue of fact as to whether Garden City

---

[7] Throughout his motion, Johnson has implied that all three suits alleging piracy of different prize fights are related. Although all three suits alleged the same illegal activity by Johnson, the similarity stops there. Each involved different plaintiffs and there is no evidence that any of the plaintiffs have any kind of relationship with each another.

acted diligently and promptly. Therefore, the Court concludes that the doctrine of latches does not bar Garden City's suit.

> 2. Section 553 Claim

In a footnote on page four of his summary-judgment motion, Johnson states, "Notwithstanding its pleadings, [Garden City] does not seriously contend that [he] was guilty of violating section 553 (interception of cable transmission). To the extent that it does, then [Johnson] says that, after reasonable time for discovery, there is no evidence to support such a claim by [Garden City]." (Def.'s Mot. at 4 n.2.) Although Johnson leaves his argument at that, the Court understands this argument to posit that since the evidence establishes that Johnson's establishment had subscribed to a satellite TV service and not a cable TV service, he cannot be held liable under section 553 because it only applies to the pirating of TV programming broadcast through a coaxial cable.

Garden City did not respond to this argument. The Court notes, however, that in the joint pretrial order, the parties agreed that the contested issues of law include the amount of statutory damages to be awarded to Garden City if it successfully proves liability under section 605, the amount of additional damages to be awarded to Garden City if it successfully establishes that Johnson willfully violated section 605, and the amount of attorney's fees to be awarded to Garden City if it successfully

establishes Johnson's liability under section 605.  Likewise, the contested issues of fact include whether Johnson exhibited the Tyson/Lewis fight in his establishment and when Garden City first discovered Johnson's alleged illegal activity.

> It is a well-settled rule that a joint pretrial order signed by both parties supersedes all pleadings and governs the issues and evidence to be presented at trial . . . . The claims, issues, and evidence are narrowed by the pretrial order, thereby narrowing the trial to expedite the proceeding . . . . Once the pretrial order is entered, it controls the course and scope of the proceedings under Federal Rule of Civil Procedure 16(e), and if a claim or issue is omitted from the order, it is waived, even if it appeared in the complaint.

*Elvis Presley Enterprises, Inc. v. Capece,* 141 F.3d 188, 206 (5th Cir. 1998)(internal quotations and citations omitted).  The joint pretrial order does not contain any contested issue of fact or law regarding Garden City's claim under section 553.  That, together with Garden City's failure to respond to Johnson's contention that section 553 does not apply to claims of piracy involving satellite TV transmissions, strongly imply that Garden City has abandoned that claim.  Thus, the Court so concludes.

3.  Section 605 Claim

In his reply brief, Johnson argues that Garden City "has no evidence to show that [he] 'exhibited' or 'broadcasted' the [Tyson/Lewis fight] to anyone."  (Def.'s Reply at 2.)  Johnson

16

contends that Garden City's evidence only shows that "someone 'ordered' the [fight] from DirecTV on the night in question on [his] DirecTV receivers." (*Id.*) Johnson argues that there is no genuine issue of material fact as to whether he exhibited the Tyson/Lewis fight in his establishment because Garden City "offers no one to provide evidence that the [fight] was actually broadcasted in the establishment on the night in question or that any patron or other person there saw or witnessed the broadcast." (*Id.*)

In essence, Johnson argues that summary judgment is appropriate because Garden City cannot offer any direct evidence proving the Tyson/Lewis fight was rebroadcast in his establishment. Direct evidence is evidence that, if believed, would prove the fact in issue without the necessity of any inference. *See Fabela v. Socorro Independent School District,* 329 F.3d 409, 415 (5th Cir. 2003). It is true that Garden City has not produced any direct evidence that Johnson exhibited the Tyson/Lewis fight in his establishment.

The question for the Court, then, is whether Garden City has provided sufficient circumstantial evidence to create a genuine issue of material fact as to whether Johnson exhibited the Tyson/Lewis fight in his establishment without a license. In making this determination, the Court must look at the full record including the pleadings, depositions, answers to interrogatories,

17

admissions on file, and any affidavits. *See* FED. R. CIV. P. 56(c); *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir. 2002). The evidence must be viewed in light most favorable to Garden City and the Court must draw all reasonable inferences in its favor. *Hotard v. State Farm Fire & Cas. Co.*, 286 F.3d 814, 817 (5th Cir. 2002). But if the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). With those principles in mind, the Court concludes that Garden City has presented sufficient circumstantial evidence that a reasonable fact finder could conclude that Johnson exhibited the Tyson/Lewis fight in his establishment on the night in question without a license. That compels a conclusion that Johnson is not entitled to summary judgment on Garden City's section 605 claim.

Johnson owns a commercial establishment that serves alcohol to its patrons. It contains more than one TV receiver for his customers to view while patronizing his establishment. It is undisputed that Johnson had an account with DirecTV to provide satellite TV services for his establishment. His account included two satellite TV receivers and was set up as a residential, not a commercial, account. It is also undisputed that Johnson's DirecTV account reflects that on the night of the Tyson/Lewis fight, someone telephoned DirecTV and, after being placed on hold for thirty minutes, placed an order under his account to receive the

18

fight on both receivers. Johnson's account was billed twice for the fight because it was sent to both of his satellite TV receivers.

The evidence also shows that Johnson kept the invoices he received monthly from DirecTV in the regular course of business. Johnson admits that he kept those invoices and, after reviewing them, he admits that he was charged twice for the Tyson/Lewis fight. Although Johnson vehemently denies ever ordering the fight and denies that he gave anyone authority to order the fight, Johnson's account reflects that he paid the invoice and did not contest the charges despite being billed $119.90 ($59.95 x 2) for the fight.

This circumstantial evidence is more than merely colorable. Taken together, a reasonable fact finder could conclude that either Johnson or someone under his direction called DirecTV and, after being placed on hold for thirty minutes, ordered the Tyson/Lewis fight for both receivers at his establishment so he could exhibit the fight to his customers. Although Johnson fiercely denies this, a credibility determination between the circumstantial evidence and Johnson's denials is inappropriate in a summary judgment. *See Tarver v. City of Edna*, 410 F.3d 745, 753 (5th Cir. 2005). While the fact finder may ultimately believe Johnson, this decision cannot be made at the summary-judgment stage. *See, e.g., id.; Ikerd* v. Blair, 101 F.3d 430, 433-36 (5th Cir. 1996). But because

Garden City has presented sufficient probative circumstantial evidence that a reasonable fact finder could infer and conclude that Johnson ordered (or had someone order) the Tyson/Lewis fight and exhibited it in his establishment without a proper license, the Court concludes that a genuine issues of material fact exists as to whether Johnson violated section 605 of the FCA.

III. Conclusion

For the forgoing reasons, the Court PARTIALLY GRANTS AND PARTIALLY DENIES Johnson's motion for summary judgment. Having concluded that Garden City has abandoned its claim under section 553, it is DISMISSED WITH PREJUDICE. In all other aspects, Johnson's summary-judgment motion is DENIED.

SIGNED January 15, 2008.

*Terry R. Means*
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE